ARTHUR M. SCHORR v. THE STATE.

No. 20110. Delivered October 11, 1939.
Rehearing Denied November 15, 1939.

The opinion states the case.

*William B. Blanchet, Leo Brewer,* and *William W. Goodrich,* all of San Antonio, for appellant.

*Henry C. Kyle,* County Attorney, of San Marcus, and *Lloyd W. Davidson,* States Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for negligent homicide. The punishment assessed is a fine of $500.

Appellant and Henry Arnold were jointly charged with negligent homicide by complaint and information which contained four counts. The first two charged negligent homicide in the first degree; the third and fourth charged negligent homicide in the second degree. Appellant was alone put on trial and found guilty of negligent homicide in the second degree and assessed a punishment as above stated.

The testimony, adduced by the State, shows that on Sunday, February 6, 1939, appellant, Henry Arnold, Walter Feigenbaum and J. Rickland left San Antonio for Austin about eight a. m. in an automobile. Arnold, who was driving the car, testified that appellant asked him to drive as he had been recommended to him as an experienced and careful driver. He stated that he drove at rates varying from fifty to fifty-five miles per hour. That when they reached a point on the highway near Buda where the Goforth Road crosses the San Antonio-Austin Highway, they collided with an old model T Ford in which C. J. Bardle and Ole Blackwell were riding. This car appears to have been traveling at approximately twenty miles

per hour. Immediately before the collision, appellant called Arnold's attention to this old car which was attempting to cross the highway and warned him to watch out. Arnold immediately applied the brakes, causing the car to skid. Arnold stated that at that time he was driving on the right hand side of the white marker which indicated the center of the highway He further testified that he also saw a car coming from the direction of Austin and it would have been impossible to have gone around the back end of the Ford without having a head on collision with the oncoming car.

Feigenbaum, one of the other occupants of the car besides Arnold and appellant, was the only person who testified for appellant. He stated that the car in which they were traveling was running about thirty-five to forty miles per hour.

Appellant's first complaint is that the court erred in declining to sustain his motion to quash the complaint and information on the ground that appellant and Arnold could not be co-principals in the commission of the offense charged, because it was a physical impossiblity for both to be driving the same car at the same time and place.

This proposition is, of course, true as a physical fact, but is not true as a legal proposition. Appellant could be a co-principal by urging and encouraging Arnold, the driver, to drive the car at a speed in excess of that allowed by law, and yet never touch the mechanism by which the car is put into motion and by which it was being operated.

It is true, however, that in order to bring appellant within the term "principal" he must have aided, abetted or encouraged by words or gestures, the driver to violate the speed law, which act, according to the State's theory, led to the collision and caused the death of the injured person. See Art. 66 P. C. The solution of this question depends, of course, on the evidence. If there is no evidence in the record to show encouragement by words or gestures, then the proof fails to sustain the conviction, since in no way did appellant aid or abet in the act and therefore could not be a co-principal. The only testimony which we have been able to discover in the record that might be construed as "encouraging by words or gestures" is that given by the State's witness, Arnold, who testified that appellant did not discuss the rate of speed, but did say that he, Arnold, was a good driver; that said statement was made at a time when he was driving at about fifty or fifty-five miles per hour. That if appellant had been dissatisfied with the speed, he should have said so. Again, Arnold testified that at one

time appellant remarked to the two occupants of the back seat about how smoothly the car was running. He stated that from the time of that remark to the time of the fatal accident, the car did not slow down. No other testimony appears in the record which could be construed as encouragement given Arnold, the driver, by appellant. Can these statements be construed as coming within the meaning of encouragement so as to bring appellant within the category of a principal? We think not. In the case of Floyd v. State, 29 Tex. Crim. Rep., 349, 16 S. W., 188, this court, speaking on a similar question, said: "Under our statutes it requires more than the bare presence of a party to constitute him a principal offender. Penal Code, arts. 74, 75 et seq. There must be an acting together. 'Concealment of the knowledge that a felony is to be committed will not make the party concealing it an accessory before the fact, nor will a tacit acquiescence, or words which amount to a bare permission, be sufficient to constitute this offense." See, also, Mowery v. State, 132 Tex. Crim. Rep., 408.

To make appellant a co-principal, he must have known, or it must have been apparent to him, that the driver was exceeding the legal speed limit, and by words or gestures encouraged him to do so. Unless it can be said that as owner of the car and employer of the driver at the time, he had general control of both and this constituted him a principal, he cannot be held liable. Even if it could be said that under such circumstances he could be a co-principal, a conviction could not be sustained in the absence of a showing by proof beyond a reasonable doubt that he knew the driver was exceeding the speed limit, or proof that the speed was so excessive that he should have known. There is testimony in the record which shows that appellant was not an efficient and experienced driver, and for this reason he sought out Arnold who had been recommended to him as such. Can it be said that appellant was criminally negligent in sitting by the side of this driver and failing to constantly keep his eyes upon the speedometer when he had been assured that he had engaged a careful and experienced driver? We do not think so under the circumstances of this case.

It follows that the State, in order to make appellant a co-principal, was required to show that appellant knew that the driver was exceeding the legal speed limit and by words or acts encouraged such conduct, or that he failed to remonstrate with a driver over whom he had general control.

It will be noted from an analysis of the law of principals

that mere tacit acquiescence or words which amount to a bare permission are not sufficient to constitute one a co-principal. It is an axiomatic truth that one cannot encourage the commission of an unlawful act or instigate it unless he has knowledge that it is being, or is about to be committed. The same would be true of a person who has the general control of an automobile and the driver, where there is no such knowledge.

To one experienced in the management and operation of an automobile, a slight variation in speed from that of the legal speed limit would not be readily perceptible. Especially would this be true in such a case as the instant one where it is shown by the proof that the appellant was engaged for the most part in talking to the occupants of the back seat. Of course had the excess in speed been greater, it might have given rise to a presumption that appellant would have known of the illegal act and been under a duty, since he had general control to curtail it. But where the speed of the automobile might have, at times, exceeded the legal rate and been under it at other times, we think the State ought to be required to show knowledge of the excess at a particular time. This they have not done in the instant case. It follows that the evidence is insufficient to support the conviction.

In view of the disposition we are making of the case, the many other matters complained of by appellant need not be discussed, since they will probably not occur again on another trial.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

A very able and exhaustive brief on the questions raised in the motion for a rehearing has been filed by the Honorable Henry C. Kyle, County Attorney, in which it is earnestly insisted that this case should be affirmed under Art. 69, P. C., which is as follows:

"Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act."

It is also insisted that an automobile is a dangerous instrument of such a nature as to require that the owner placing it in another's hands to operate must be held to be criminally responsible for the results. We are unable to agree that a further consideration of the article of the Penal Code quoted should in any way modify the original opinion reversing this case. Inasmuch as our courts have repeatedly held that an automobile is not a dangerous instrument "per se" and that the owner could be liable for the acts of one operating it only under certain conditions, we are unable to accede to the second proposition urged by the State in its motion for rehearing.

It might be difficult to conceive of a case in which the owner of a car "advises or agrees to the commission of an offense" growing out of an accident found to be criminal negligence; but even so, the facts of this case would not justify it. The importance of the question has led to a thorough consideration of the proposition submitted in the State's motion for rehearing.

Berry, on the Law of Automobiles, 6th Edition, Vol. 2, Sec. 2016, writes the law as follows: "The conviction of the owner of an automobile, who was riding therein when it was being driven at a high rate of speed and negligently run against a buggy, killing an occupant thereof, was unjustified, where it appeared that his chauffeur was driving the machine, and that he could have done nothing to prevent the collision, and there was no evidence that it was the habit of the chauffeur to run dangerously close to other vehicles to the knowledge of the owner without correction.

" 'If the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel.' "

This is supported by cases from jurisdiction where an automobile is considered a dangerous instrument "per se," yet the author has, nevertheless, stated a rule of law which we think should be applied in this case and which is amply supported by a well-considered authority. See People v. Scanlon, 117 N. Y. Supp. 57.

Huddy, on the Law of Automobiles, 5th Edition, p. 952, sec. 725, treats the subject as follows: "In case of a prosecution for homicide arising from a collision between an auto-

mobile and a buggy, the owner of the machine is not to be convicted, though riding in the machine at the time, where he was not running the machine at the time and could not have done anything to have avoided the accident, and there was no evidence that it was the habit of the driver to run dangerously close to other vehicles to the knowledge of the owner without correction. So, too, the owner is not liable, though riding in the machine, where he gave no orders to the chauffeur, and it appears that the chauffeur acted on his own volition with reference to the reckless conduct under consideration."

The author discusses instances in which the owner of the car may be liable as in a case where he undertakes to control the operation of the machine specifically rather than to exercise a general control over it. In a case where the car was being operated by the chauffeur at a speed so exceedingly great and with such reckless disregard of the proper rules, or the law of the road as to attract the attention of the owner, he was said to have acquiesced by his silence or to have approved of the continuous conduct by his failure to direct otherwise. Thus, a condition may arise for which the owner would be originally liable. In jurisdictions where the regulations prohibit the owner from permitting certain conduct upon the part of the operator, the owner will, of course, be held to be liable in a case where he has refrained from restraining the operator. See Commonwealth v. Druschell, 66 Pitts. Leg. Journal (Pa.) 520.

We have found, as pointed out by appellant's counsel in the original brief, that the leading case and the one most in point is People v. Scanlon, 117 N. Y. Supp, 57. We quote from that opinion with approval and as applicable to this case the following: "These conclusions lead to the affirmance of the conviction of the defendant Scanlon, the chauffeur; but the rights of the defendant Albro rest upon a different basis. * * * * * He was not running the machine. He could not turn it the few feet that were necessary to avoid the accident. * * * * * Albro had the right to assume that, with the street sufficiently broad to make an easy passage, the chauffeur would exercise the proper judgment and turn out his machine sufficiently to avoid a collision. In the few seconds of time which elapsed after he might have seen that a collision was to occur, he could not give directions which would avoid the collision. The whole thing was, as it were, instantaneous, in the control of the chauffeur, but in no way in the control of the owner of

the car. He had not the wheel in hand. It is true that the chauffeur was under the control of the owner, but that means the general control. He might give general directions. * * * * * If it were the chauffeur's habit to run so close to other cars as to cause danger, and Albro knew of it, without correcting it, he might be held liable for this negligence; but there is not one word of evidence to the effect that this was the habit of the chauffeur, and Albro's conviction must rest upon his failure within a second of time to give directions, which could not even be comprehended and acted upon, if given, in time to have avoided the accident."

While the decisions of the courts on the subject have not been so many, there has been sufficient reference to this case to give substantial assurance that the law laid down therein is acceptable to a careful consideration of the subject.

In case of Story v. United States, 16 Fed. Rep. (2d) 342, we find a very definite statement of the law on the subject in the following words: "If the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel."

The court had under consideration a case in which it appears that the owner and his companions were drinking very heavily and neither of them was in a condition to properly and safely operate an automobile on any kind or character of highway. The owner placed the car in the hands of one of his companions, well knowing his condition and well knowing the inevitable result of the "mixture" commonly referred to as gasoline and alcohol. It is true that it was held in that case that the owner was liable, but the court, nevertheless, distinguishes the case under the facts from the Scanlon case, supra, from which we have quoted above. There can be no doubt that the federal judge intended to approve the Scanlon case, and certainly it is not disapproved.

The State insists in a well-prepared argument in its motion for rehearing that this case should be affirmed under Art. 69, P. C. We are unable to find anything in the record which could, under the circumstances, be construed to be any "advice" or "agreement" upon the part of the appellant to the commission of the offense. Certainly it cannot be upon the

theory that the owner of the car was present. See Allen v. State, 20 S. W. (2d) 1056; Blackstock v. State, 115 Tex. Cr. R. 284, 29 S. W. (2d) 365; Williams v. State, 119 Tex. Cr. R. 345; 42 S. W. (2d) 1017; Lewis v. State, 119 Tex. Cr. R. 265, 44 S. W. (2d) 375; Payne v. State, 120 Tex. Cr. R. 230, 46 S. W. (2d) 316; Gillard v. State, 128 Tex. Cr. R. 514, 82 S. W. (2d) 678; Mowery v. State, 132 Tex. Cr. R. 408, 105 S. W. (2d) 232.

We recognize the importance of the determination of this appeal and the interpretation of the law as herein given and have reached our conclusion with great reluctance after a careful consideration of a question of unusual importance which has not heretofore been decided in this State, with an effort to speak only as the facts of this case demand and fully cognizant of the fact that other cases may arise having some similarity in which the law should be applied with different results. We have concluded that the case was properly reversed and that the law therein written was correctly applied to the facts of this case.

The motion for rehearing is overruled.